UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ELIJAH HUDDLESTON, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 4:17CV2456 HEA |
| v. ) | |
| ) | |
| CITY OF BYRNES MILL, MO., ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendant City of Byrnes Mill's Motion for Summary Judgment, [Doc. No. 47]. The City of Byrnes Mill is named as a defendant only in Counts I and III of Plaintiffs' Second Amended Complaint (the "SAC"), Count II is not at issue here. Plaintiffs oppose the Motion, which has been fully briefed. For the reasons set forth below, the Motion is granted.

**Facts and Background**

Unless otherwise noted, the following facts are undisputed:

Plaintiffs Elijah Huddleston ("Elijah") and Alyssa Huddleston ("Alyssa") (collectively, "Plaintiffs") are husband and wife who reside in the City of Byrnes Mill. Defendant City of Byrnes Mill (the "City") is a municipal corporation

1

located in Jefferson County, Missouri. Defendant Mike Smith ("Smith") was employed by the City as Police Chief and a Police Officer. Defendant Roger Ide ("Ide") was employed by the City as a Police Officer. Neither Smith nor Ide is a party to the instant action for summary judgment.

On November 22, 2013, Alyssa called 911 to report a domestic dispute, telling the dispatcher that Elijah had a gun to her head and was going to shoot her. Since his felony conviction in 2006, Elijah has been unable to lawfully own or possess a firearm. Ide and Smith responded to the call at the Plaintiffs' home. After speaking to Alyssa, Smith had Ide place Elijah under arrest and remove him from the premises. Afterward, Alyssa gave consent to Byrnes Mill police officers to search Plaintiffs' residence and shed. In a written statement, Alyssa stated that Elijah threatened to sodomize her because she was drunk, wanted to rape her with his rifle, and choked her when she refused. However, the contents of the written statement are disputed to the extent that Alyssa testified at her deposition that Smith "told [her] how to write [her] statement and what not to put down."

Plaintiffs' SAC alleges that officers confiscated knives and cash on November 23, 2012 which were never returned. In the City's statement of facts, it asserts that no such property was found in a search and inventory of the Byrnes Mill Police Department evidence locker and Byrnes Mill City Hall. The City's assertion is supported by an affidavit of the Byrnes Mill City Attorney and by the

2

original police report which mentions no knives or money being seized. In support of their own position on the matter, Plaintiffs cite a news article from after the search of the Police Department in which the new Byrnes Mill Police Chief said that he shut down the evidence locker room and opened an investigation because evidence was not packaged and labeled correctly. The City objects that the supporting news article is inadmissible hearsay under Fed.R.Civ.P. 56(c)(2). Plaintiffs also cite Elijah's deposition testimony in support of their assertion that knives and money were confiscated and never returned. Defendant disputes that assertion, again citing the original police report and City Attorney's affidavit.

On December 3, 2013, Elijah was pulled over while driving by Officer Shawn Hendel. Alyssa, a passenger in Elijah's vehicle, then yelled "Help Me!" to get Hendel's attention. In the police report, Hendel wrote that Alyssa then accused Elijah of attempting to take off her pants and have sex with her while he was driving and that when she refused, he punched her in the stomach. The police report is disputed because Alyssa testified that she did not recall making those precise allegations. However, she testified that she did tell Hendel "Help me . . . arrest him, he's beating me up," with the intention of getting Elijah arrested. Hendel arrested Elijah for domestic assault in the third degree.

On October 23, 2015, Officer Jamie Mayberry of the Byrnes Mill Police Department was dispatched to Plaintiffs' residence in reference to a subject

3

illegally burning items. Upon arrival, Officer Mayberry observed a substantial amount of smoke in the neighborhood and two fires burning in Plaintiffs' yard. Elijah allowed Officer Mayberry onto his property to inspect the fires, and Officer Mayberry observed that one of the fires was burning in a barrel with a makeshift lid. Officer Mayberry ordered Elijah to put out the fires, but he refused to do so.

In the SAC, Plaintiffs allege that the City is subject to municipal liability for the actions of Smith and Ide. Neither party has offered admissible factual information as to municipal liability. Plaintiffs offered as purported facts the City's alleged failure to have "general orders" for police officers and examples of police misconduct. However, in support of these proposed facts, Plaintiffs cited only news articles. The City has objected that these supporting news articles are inadmissible hearsay under Fed.R.Civ.P. 56(c)(2).

In the SAC, Plaintiffs allege that they "have been harassed by the Defendant and members of the Byrnes Mill police department by giving Plaintiffs an unwarranted and egregious amount of traffic tickets and fines."   Neither party has offered factual information regarding specific tickets and fines, including what about the said tickets and fines renders them "unwarranted."

## Standard of Review

"Summary judgment is proper where the evidence, when viewed in a light most favorable to the non-moving party, indicates that no genuine [dispute] of

4

material fact exists and that the moving party is entitled to judgment as a matter of law." *Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 654 (8th Cir. 2007); *see* Fed. R. Civ. P. 56(a).  Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party.  *Id*.  "The basic inquiry is whether it is so one-sided that one party must prevail as a matter of law."  *Diesel Machinery, Inc. v. B.R. Lee Industries, Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (internal quotation marks and citation omitted).  The moving party has the initial burden of demonstrating the absence of a genuine dispute of material fact.  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (citation omitted).  Once the moving party has met its burden, "[t]he nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial."  *Id*. (internal quotation marks and citation omitted).

To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'"  *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003)

5

(quoting *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)). The nonmoving party may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in his or her favor. *Wilson,* 62 F.3d 237, 241 (8th Cir. 1995). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin,* 483 F.3d 516, 526-7 (8th Cir. 2007).

## Discussion

As addressed in this Court's partial dismissal of Count I, [Doc. No. 58] the section headings of Count I in the SAC are understood to delineate separate and distinct § 1983 causes of action. Each of these claims are addressed below, along with the replevin action asserted in Count III.

**Fourth Amendment Claims**

Elijah claims that the defendants deprived him of his Fourth Amendment right to be free from unreasonable searches and seizures by searching his home and shed on November 22, 2013, and by arresting him on November 22, 2013, December 3, 2013, and October 23, 2015. The City argues that the arrests were based on probable cause and that Alyssa gave consent for the search.

"A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause." *Amrine v. Brooks,* 522 F.3d 823, 832 (8th Cir.

6

2008). "Probable cause exists when the totality of the circumstances shows that a prudent person would believe that the arrestee has committed a crime." *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983); *United States v. Washington*, 109 F.3d 459, 465 (8th Cir.1997)). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010) (*quoting Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. "Whether probable cause existed at the time of the arrest is a question of law for the court." *Duhe v. City of Little Rock*, 902 F.3d 858 (8th Cir. 2018) (*quoting Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010).

At the time of the November 22, 2013 arrest, Smith and Ide knew that Alyssa had called 911 and reported that Elijah had a gun and was going to shoot her. Plaintiffs' arguments against the existence of probable cause to arrest Elijah are that: Alyssa was intoxicated when she made the allegations against Elijah; Mike Smith, who made the decision to arrest, did not speak to Elijah first; and that "no evidence [was] cited in the police report that would lead a reasonable officer to believe Alyssa had been abused."

7

First, an alleged victim's sobriety or intoxication is not dispositive of the truth of their claims. A prudent person can reasonably believe someone who says they have been harmed, even if that person has been drinking. Second, the police report does not actually support Plaintiffs' contention that Smith did not speak to Elijah before deciding to arrest him. Smith's supplementary report states that he observed Elijah and Alyssa having an argument, he asked Elijah what was going on, and Elijah said "I don't know why you are here." Smith and Ide's reports both state that Smith asked Ide to take Elijah outside while Smith questioned Alyssa, and that Elijah told Ide he had no idea what was going on. A suspect's denials of wrongdoing do not defeat probable cause. Finally, the police report does not support Plaintiffs' claim that nothing in the report indicated abuse. Rather, the report contains Alyssa's allegations that she was threatened with bodily harm by Elijah while he was in possession of a firearm. Moreover, it is undisputed that Alyssa told police that Elijah had threatened her with a gun, which he was not lawfully allowed to possess as a felon. The fact that Alyssa now claims she lied about the assault is immaterial, as only the facts known to an officer at the time of the arrest are relevant to the probable cause determination. Considering the totality of the circumstances at the time of arrest, a prudent person could conclude that Elijah had committed assault and was a felon in possession of a firearm.

Therefore, Elijah's arrest on November 22, 2013 was based on probable cause and did not violate his Fourth Amendment rights.

At the time of the December 3, 2013 arrest, Officer Hendel was presented with a passenger in a vehicle yelling "Help Me!" at him. Although Plaintiffs assert that Alyssa does not remember making the exact allegations in the police report, she did testify in her deposition that she yelled for help and made statements about abuse with the goal of getting Elijah arrested. Plaintiffs made no argument in their response the City's motion for summary judgment about the December 3 arrest, although they did include in their statement of facts that Alyssa was intoxicated. The City objected to this proposed fact as immaterial to probable cause; following the same logic about the veracity of an intoxicated victim's statements discussed *supra*, the Court agrees. Nothing in the record suggests that Alyssa's claims of abuse were so incredible that it was unreasonable for Hendel to believe that Elijah had assaulted Alyssa. Therefore, Elijah's arrest on December 3, 2013 was supported by probable cause and did not violate his Fourth Amendment rights.

In their response the City's motion for summary judgment as to Elijah's October 23, 3015 arrest, Plaintiffs argued that:

> [Alyssa] testified [at her deposition] that that Fire Department responded to the house and stated that there was nothing wrong with the fires. [Elijah] further testified that several police officers have responded to Plaintiff's [sic] house regarding fires and that he was never instructed to put them out by the other officers. If the Fire Department explained to Officer Mayberry that the fires were ok, then

9

> a reasonable officer could not reach the conclusion that the crime or offense was being committed. Nonetheless, Officer Mayberry insisted that Plaintiff extinguish the fires, which was outside his authority once the fire department said the fires were alright.

It should be noted that Plaintiffs admitted all of the City's proposed facts regarding the October 23 arrest and offered no additional information about the arrest in their own statement of proposed material facts.

Elijah's testimony that other officers had not instructed him put out previous fires is not relevant to whether Mayberry had probable cause to believe Elijah was committing a crime that day, with that fire. Mayberry even noted in his police report that Elijah had been "warned" multiple times about unlawful burning. Alyssa's testimony that the fire department said "there was nothing wrong with" the fires is self-serving hearsay and does not indicate that Elijah did not refuse to comply with a lawful order of a police officer. At the time of the arrest, Mayberry saw a substantial amount of smoke and two fires burning in Plaintiffs' yard, one of which was burning in a barrel with a makeshift lid. Mayberry, who knew the call was in reference to "burning items," ordered Elijah to put out the fires. Elijah refused. These facts support Mayberry's determination that he had probable cause to arrest Elijah for illegal burning and refusing to comply with a lawful order. Elijah's arrest on October 23, 2015 did not violate his Fourth Amendment rights.

Plaintiffs also argue that a genuine issue of fact exists regarding the validity of Alyssa's consent to search the Plaintiffs' home on November 22, 2013 because

10

she was intoxicated at the time. "The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make and arrest or to search for specific objects." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). "The prohibition does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched or from a third party who possesses common authority over the premises." *Id.* (internal citations omitted). "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *United States v. Watters*, 572 F.3d 479, 483 (8th Cir. 2009). Factors relevant to the voluntariness of a consent to search include whether the consenting party was intoxicated, but intoxication alone does not render consent invalid. *Id.*; *see also United States v. Castellanos,* 518 F.3d 965, 969 (8th Cir. 2008) ("The mere fact that one has taken drugs, or is intoxicated, or mentally agitated, does not render consent involuntary."). "In each case, the question is one of mental awareness so that the act of consent was the consensual act of one who knew what he was doing and had reasonable appreciation of the nature and significance of his actions." *Watters*, 572 F.3d at 483. Here, Plaintiffs' contentions that Alyssa was "extremely intoxicated" and "did not have the requisite mental capacity to consent" represent the Plaintiffs' own conclusions and are unsupported by specific, probative facts

11

about her mental awareness. Under the summary judgment standard, such allegations are insufficient to withstand a motion for summary judgment. *Thomas*, 483 F.3d at 526-7. Because Plaintiffs have not come forward with specific facts showing a genuine issue as to the voluntariness of Alyssa's consent to search her home, the City is entitled to summary judgment as to the legality of the November 22, 2013 search.

Byrnes Mill Police Officers had probable cause for all three arrests of Elijah and had consent to search Plaintiffs' home. Therefore, the arrests and search complied with the requirements of the Fourth Amendment. Summary judgment will be entered for the City as to Plaintiffs' Fourth Amendment claims.

**Harassment, Excessive Citation Claim**

In Count I, Plaintiffs also claim that between the years of 2006 and 2013, the City and members of the Byrnes Mill Police Department harassed them by giving them an unwarranted and egregious amount of traffic tickets. Plaintiffs allege approximately $30,000.00 in damages from tickets and fines. In its motion for summary judgment, the City argues that (1) any alleged violations of Plaintiffs' constitutional rights that occurred prior to August 23, 2013 are barred by the statute of limitations; (2) the Byrnes Mill police officers had objective probable cause to issue the citations against Plaintiffs; and (3) that such a claim is barred

12

pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Heck*, the Supreme Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm cause by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus [ ]. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Id.* at 486-87.  If a judgment in favor of a plaintiff would unnecessarily imply the invalidity of his conviction or sentence, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  *Id.*

In their brief in opposition to the motion for summary judgment, Plaintiffs restate their allegation that "Byrnes Mill police officers … harassed [Elijah] by making unwarranted traffic stops and giving excessive citations," but do not address their harassment/excessive citation claim further or offer opposition to the City's arguments in support of summary judgment on that claim.  Accordingly, Plaintiffs have waived those arguments.  *See Satcher v. University of Arkansas at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009) ("failure to oppose a basis for summary judgment constitutes a waiver of that argument"); *see also, e.g.*

13

*Thompson v. Walters*, No. 4:15-CV-00709-SWW, 2016 WL 6089719, at *3 (E.D. Ark. Oct. 18, 2016).

Plaintiffs' harassment/excessive citation claim is, in fact, barred by the doctrine set forth in *Heck v. Humphrey*, discussed *supra*.  Plaintiffs have presented no argument or evidence that any traffic tickets issued to them were invalidated as required by *Heck*.  A grant of judgment in favor of Plaintiffs on this issue would be tantamount to declaring the invalidity of each ticket Plaintiffs received and fine Plaintiffs paid.  Because *Heck* bars this type of claim under § 1983, the City is entitled to summary judgment on the harassment/excessive citation claim.

**Municipal Liability**

Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *Monell v. Dep't of Soc. Serv.,* 436 U.S. 658, 690–91 (1978); *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388–89 (1989).  A plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by an action pursuant to official municipal policy or misconduct so pervasive among non-policymaking employees of the municipality as to constitute a custom or usage with the force of law." *Ware v. Jackson Cnty., Mo.,* 150 F.3d 873, 880 (8th Cir.1998) (internal quotation marks and citation omitted). "[I]n order to state a

14

viable § 1983 claim . . . plaintiff is required to plead facts sufficient to show at least an inference that his constitutional rights were violated as a result of action taken pursuant to an official policy, or as a result of misconduct so pervasive among non-policymakers as to constitute a widespread custom and practice with the force of law." *Davis v. St. Louis County, Mo.,* 2015 WL 758218, at *12 (E.D.Mo. Feb. 23, 2015) (citation omitted).

Because Plaintiffs have failed to overcome summary judgment on each of their constitutional claims against the actions of individual Byrnes Mill police officers, Plaintiffs cannot satisfy their burden of establishing municipal liability or liability of the governmental entity. *Brockinton v. City of Sherwood, Ark*, 503 F.3d 667, 674 (8th Cir. 2007). The City is entitled to summary judgment as to municipal liability.

**Replevin**

In Count III, Plaintiffs seek replevin for knives and $6,000.00 cash, property that they allege was confiscated by Byrnes Mill police officers following the search of Plaintiffs home on November 23, 2013 and never returned to them. In its motion for summary judgment, the City argues the Byrnes Mill Police Department and City Hall have already been searched, and that it is not in possession of the $6,000.00 or knives in dispute. Because it does not possess the property, the City argues, replevin cannot lie. Plaintiffs failed to respond to the

15

City's argument.  As the Court discussed, *supra*, Plaintiffs have therefore waived the argument.  *See Satcher*, 558 F.3d at 735 (8th Cir. 2009); *Thompson*, 2016 WL 6089719, at *3.

"Replevin is a possessory action to obtain property *that is in the defendant's possession*." *Patterson v. Rough Rd. Rescue, Inc.*, 529 S.W.3d 887, 893 (Mo. App. E.D. 2017) (emphasis added) (citing *Herron v. Barnard*, 390 S.W.3d 901, 908 (Mo. App. W.D. 2013).  The plaintiff in a replevin action has the burden of proving: 1) that the plaintiff owned the property or was entitled to possess it; 2) that the defendant took possession of the property with the intent to exercise some control over it; and 3) that the defendant, by exercising such unauthorized control over the property, deprived the plaintiff of his right to possession.  *Id.* (citing *Herron*, 390 S.W.3d at 909).  The City's argument that replevin cannot lie when a defendant is not in possession of property is legally sound.

Notwithstanding their failure to oppose the City's basis for summary judgment, Plaintiffs included in their proposed facts statements made by the new Byrnes Mill Police Chief casting doubt on the accuracy of the City's search of the evidence locker.  This proposed fact was supported only by a citation to a news article, rendering it inadmissible hearsay under Fed.R.Civ.P. 56(c)(2).  Because Plaintiff's proposed fact was not properly supported, the Court finds that the City's assertion that it does not have possession of Plaintiff's property is undisputed for

16

the purposes of this motion for summary judgment. Therefore, replevin does not lie and the City is entitled to summary judgment as to Count III.

## Conclusion

Based upon the foregoing analysis, the City is entitled to summary judgment as to each of the claims against it. Judgment for the City will be entered upon disposition of the remaining issues in this action.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant City of Byrnes Mill's Motion for Summary Judgement [Doc. No. 47] is **GRANTED**.

**IT IS FURTHER ORDERED** that the trial setting for December 2, 2019 [Doc. No. 62] is **VACATED**.

**IT IS FUTHER ORDERED** that Plaintiffs' First Motion to Continue Trial [Doc. No. 67] is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Plaintiffs' First Motion for Discovery to Defendant City of Byrnes Mill [Doc. No. 44] is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Defendant City of Byrnes Mill's First Motion to Dismiss Case for Failure to Prosecute [Doc. No. 76] is **DENIED as moot**.

Dated this 19th day of November, 2019.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE